**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| UBIQUITOUS CONNECTIVITY, LP,<br><br>　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN ANTONIO, by and through its agent, CITY PUBLIC SERVICE BOARD OF SAN ANTONIO, d/b/a CPS ENERGY,<br><br>　　　Defendant. | CIVIL ACTION NO. 5:18-cv-00718-XR<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S OPPOSED MOTION TO STRIKE THE EXPERT DECLARATION OF
IVAN ZATKOVICH [Dkt. No. 29]**

Plaintiff UBIQUITOUS CONNECTIVITY, LP (hereinafter, "Ubiquitous") hereby opposes the Motion to Strike the Expert Declaration of Ivan Zatkovich (Dkt. No. 29, the "Motion to Strike") filed by Defendant CITY OF SAN ANTONIO, by and through its agent, CITY PUBLIC SERVICE BOARD OF SAN ANTONIO, d/b/a CPS ENERGY ("CPS Energy").

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  LEGAL STANDARDS ............................................................................................. 3

   A. CONVERSION OF A MOTION UNDER RULE 12(B)(6) TO ONE UNDER RULE 56 ...................... 3

   B. THE EVIDENTIARY ISSUES UNDERLYING THE 35 U.S.C. § 101 INQUIRY. .......................... 4

III.  ARGUMENT .............................................................................................................. 5

   A. THE COURT SHOULD NOT STRIKE THE ZATKOVICH DECLARATION BECAUSE IT RELIES ALMOST EXCLUSIVELY ON THE SPECIFICATION OF THE PATENTS-IN-SUIT AND COUNTERS CPS ENERGY'S ATTORNEY ARGUMENT BY GIVING THE PERSPECTIVE OF A SKILLED ARTISAN. ................................................................................................... 5

   B. CPS ENERGY'S MOTION TO STRIKE IS NOT SUPPORTED BY ANALOGOUS CASES. .......... 8

   C. UBIQUITOUS REQUESTS LEAVE TO AMEND ITS COMPLAINT IF DEFENDANT'S MOTION TO DISMISS IS GRANTED. .................................................................................. 12

IV.  CONCLUSION ........................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), *pet. for r'hrg en banc denied*, 890 F.3d 1354 (2018) .............................................................................. 4

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.,* No. 6:15-CV-0029-WSS-JCM, 2015 U.S. Dist. LEXIS 77411 (W.D. Tex. June 12, 2015), *aff'd* 838 F.3d 1266 (Fed. Cir. 2016), *pet. for cert. denied* (U.S. Apr. 17, 2017) ...................................................................................... 3, 10

*Ancora Tech., Inc. v. HTC Am., Inc.*, No. 2018-1404 (Fed. Cir. Nov. 16, 2018) ........................... 4

*Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 Fed. Appx. 989, 2018 U.S. App. LEXIS 3779 (Fed. Cir. Feb. 16, 2018) ....................................................................................... 4

*Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012) ............................................................................................................................ 6

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *pet. for r'hrg en banc denied*, 890 F.3d 1369 (2018); *pet. for cert. filed* (U.S. Sep. 28, 2018) (No.18-415) .................................. 4, 5, 11

*Board of Regents v. Ethicon, Inc.*, No. 1-17-CV-1084-LY, 2018 U.S. Dist. LEXIS 203914 (W.D. Tex. Nov. 30, 2018) ........................................................................................................ 6

*BSG Tech LLC v. Autozone, Inc.,* Ns. 2:16-CV-529 (LEAD CASE), 2:16-CV-530, 2:16-CV-532, 2017 U.S. Dist. LEXIS 96276 (E.D. Tex. Mar. 30, 2017), *aff'd sub nom, BSG Tech LLC v. Buyseasons, Inc.,* 899 F.3d 1281 (Fed. Cir. 2018) ................................................................... 10

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 142 F. Supp. 3d 510 (E.D. Tex. 2015), *aff'd sub nom, ContentGuard Holdings, Inc. v. Apple Inc.*, 701 Fed. Appx. 957 (Fed. Cir. 2017) ..... 9

*Creative Realty Inc. v. HD Supply Waterworks Grp. Inc.,* 2014 U.S. Dist. LEXIS 32300 (W.D. La. Mar. 12, 2014) ................................................................................................................. 11

*eDekka LLC v. 3Balls.com, Inc.*, Nos. 2:15-cv-00541 JRG, 2:15-cv-00585 JRG, 2015 WL 5579840 (E.D. Tex. Sep. 21, 2015) ............................................................................................ 9

*Gines v. Horton*, 699 F.3d 812 (5th Cir. 2012) ............................................................................ 11

*Hildebrandt v. Indianapolis Life Ins. Co.*, 2009 U.S. Dist. LEXIS 27407 (N.D. Tex. Mar. 30, 2009) .......................................................................................................................................... 11

*Kennedy v. Chase Manhattan Bank USA*, 369 F.3d 833 (5th Cir. 2004) ......................................... 3

*Martinez v. Johnson*, 104 F. Supp. 3d 835 (W.D. Tex. 2015) ................................................... 3, 9

*Orostream LLC v. ABS-CBN Int'l*, Nos. 2:15-cv-248-JRG (Lead Case), 2:15-cv-251-JRG, 2015 U.S. Dist. LEXIS 134199 (E.D. Tex. Oct. 1, 2015) .................................................................... 9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ................................................................ 6

*Rodriguez v. Rutter*, 310 Fed. Appx. 623 (5th Cir. 2009) ......................................................... 3, 8

*Scanlan v. Tex. A&M Univ.,* 343 F.3d 533 (5th Cir. 2003) ........................................................ 3, 8

*Shelton v. McLane Co.*, No. 1:17-CV-888-SS-AWA, 2018 U.S. Dist. LEXIS 118547 (W.D. Tex. July 16, 2018) ......................................................................................................................... 3, 9

*Tyler v. Liberty Mut. Ins. Co.*, 2018 U.S. Dist. LEXIS 139609 (N.D. Tex. Aug. 17, 2018) ........ 11

*Wilkens v. Toyotetsu Am., Inc.*, No. SA-09-CV-515-XR, 2010 U.S. Dist. LEXIS 10419 (W.D. Tex. Feb. 5, 2010) ................................................................................................................ 4, 9

*WorkSTEPS, Inc. v. ErgoScience, Inc.*, 88 F. Supp. 3d 732 (W.D. Tex. 2015) .......................... 4, 9

**Statutes**

35 U.S.C. § 101 ................................................................................................................................ 2

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ................................................................................................ 5, 8, 9, 10

Fed. R. Civ. Proc. 12(c) ................................................................................................................ 10

Fed. R. Civ. Proc. 12(d) .................................................................................................................. 3

Fed. R. Civ. Proc. 56 ....................................................................................................................... 9

In response to CPS Energy's Motion to Dismiss (Dkt. No. 17) (the "Motion to Dismiss"), Ubiquitous filed an opposition (Dkt. No. 26, "Ubiquitous' Opposition") where it attached, as Exhibit C, the Declaration of Ivan Zatkovich In Support of Ubiquitous Connectivity's Opposition to Central Security Group's Motion to Dismiss (Dkt. No. 26-4) (the "Zatkovich Declaration"). Mr. Zatkovich's opinions (1) shine light on the historical lens through which the Patents-in-Suit must be viewed and (2) connects the specification's teachings and disclosures to that history. Rather than contend with the substance of the Zatkovich Declaration and the inescapable conclusion one reaches when the Ubiquitous patents are fully understood—that the Patents-in-Suit are patent eligible—CPS Energy filed its Motion to Strike. That Motion to Strike should be denied so the technological advances disclosed in Ubiquitous' patents may be considered by the Court on a full record.

## I.   INTRODUCTION

In the beginning of its Opposition to CPS Energy's Motion to Dismiss, Ubiquitous unveiled the true nature of CPS Energy's motion. *See* Ubiquitous' Opposition, at p. 1. As a reminder, Ubiquitous told the Court that CPS Energy's 101 Motion has one purpose—to avoid the substance of the Patents-in-Suit and to get the case dismissed before this Court is able to understand the pioneering nature of Ubiquitous' patents. *Id.* CPS Energy's further actions have now laid bare this purpose and put to rest any questions regarding its strategy. For instance, when CPS Energy raised the issue of a Motion to Strike, Ubiquitous' counsel reached out to CPS Energy's counsel and asked whether CPS Energy would consent to a motion for leave to amend the complaint. *See* Emails between J. McDonough and R. Bonilla, dated November 25-26, 2018, p. 3, attached as Exhibit A (proposing amendment to avoid a motions practice and conserve resources and costs). CPS Energy refused, and it could not identify any prejudice that it would suffer from any

amendment.[1]  *Id.*  Ubiquitous' counsel then requested if CPS Energy would consent to converting the Motion to Dismiss to a Rule 56 motion.  *Id.* at pp. 1-2.  Again, CPS Energy refused.  *Id.* at p. 1.  It is plain to see that CPS Energy does not want these issues looked at too closely.

Indeed, instead of facing the issues head on, CPS Energy has now doubled-down on its attempt to get a ruling on the Section 101 issue *before* the Court has a full record and understanding of the issues, and it has done so by trying to get evidence stricken that is central to the Step 2 inquiry.  It attempts this by citing to a few cases that did not involve patents or 35 U.S.C. § 101.  But the unique issues underlying Section 101 motions in a patent case, and specifically, whether technology was routine, conventional or well-known, requires the Court to consider the perspective of skilled artisans, or POSITAs, at the time of the invention.  CPS Energy has tried to bypass the factual inquiry underlying Section 101 by using attorney argument instead of evidence to argue that all the technologies in the Ubiquitous patents were well-understood, routine, and conventional.  At the same time, however, by making arguments on those issues, they have opened the door on the issue of what was routine, conventional and well-understood in 2004.  CPS Energy should not be able to, on the one hand, sidestep the factual inquiries underlying those issues by substituting attorney argument in place of actual evidence, and on the other hand, take the position that any real evidence on this issue be excluded.  CPS Energy's Motion to Strike must be denied.

---

[1] When asked by Ubiquitous to identify any prejudice, *see* Ex. A, at p. 2, it could only state "[a]llowing in Mr. Zatkovich's declaration is unduly prejudicial to CPS Energy because it is tantamount to agreeing that his opinions have some basis in the patents."  Obviously, Ubiquitous knows that CPS Energy disagrees with Mr. Zatkovich's opinions, but consenting to leave to amend would not mean CPS Energy has conceded it agrees with the opinions.

## II.  LEGAL STANDARDS

### A. CONVERSION OF A MOTION UNDER RULE 12(B)(6) TO ONE UNDER RULE 56

CPS Energy would like the Court to believe that converting a motion to dismiss into a summary judgment motion is improper. This is not the case. Not only do the Federal Rules explicitly provide for this (*see* Fed. R. Civ. Proc. 12(d)), the 5th Circuit has held that it is within the discretion of the Court to do so. *See Rodriguez v. Rutter*, 310 Fed. Appx. 623, 626 (5th Cir. 2009) ("If, however, a district court considers other information 'outside the complaint,' it must treat the motion to dismiss as a motion for summary judgment." citing *Kennedy v. Chase Manhattan Bank USA*, 369 F.3d 833, 839 (5th Cir. 2004)); *Scanlan v. Tex. A&M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003) (documents attached to a motion to dismiss may be considered if they "are referred to in the plaintiff's complaint and are central to the plaintiff's claim."); *see also Affinity Labs of Tex., LLC v. Amazon.com, Inc.,* No. 6:15-CV-0029-WSS-JCM, 2015 U.S. Dist. LEXIS 77411, *13 fn 6 (W.D. Tex. June 12, 2015), *aff'd* 838 F.3d 1266 (Fed. Cir. 2016), *pet. for cert. denied* (U.S. Apr. 17, 2017) (court has discretion consider materials outside of the pleadings). "In the event a motion to dismiss is converted to one for summary judgment, a district court must first give the parties notice, and then may consider all evidence presented." *Rodriguez*, 310 Fed. Appx. at 626 (citing Scanlan, 343 F.3d at 539).

Courts in the Fifth Circuit have and do convert Rule 12(b)(6) motions to Rule 56 motions. *See Shelton v. McLane Co.*, No. 1:17-CV-888-SS-AWA, 2018 U.S. Dist. LEXIS 118547, *3-*4 (W.D. Tex. July 16, 2018) ("[B]ecause there were facts needed to definitively resolve that issue, the Court informed the parties at the hearing that it was going to convert the motion to dismiss to a motion for summary judgment, as provided for in Fed. R. Civ. Proc. 12(d). The Court then ordered the parties to conduct discovery on the very limited factual issues and to then supplement their briefing."); *Martinez v. Johnson*, 104 F. Supp. 3d 835, 839 n.1 (W.D. Tex. 2015);

*WorkSTEPS, Inc. v. ErgoScience, Inc.*, 88 F. Supp. 3d 732, 739 (W.D. Tex. 2015) (converting Defendant's Motion to Dismiss given the evidence outside the pleadings submitted with it) (overruled on unrelated grounds); *Wilkens v. Toyotetsu Am., Inc.*, No. SA-09-CV-515-XR, 2010 U.S. Dist. LEXIS 10419, *8 (W.D. Tex. Feb. 5, 2010) ("Both sides here refer the Court to information outside the pleadings. Accordingly, the Court treats Defendant's motion as a motion for summary judgment."). If the Court converts CPS Energy's Motion to Dismiss to a summary judgment motion, it is not doing anything exceptional.

### B. THE EVIDENTIARY ISSUES UNDERLYING THE 35 U.S.C. § 101 INQUIRY.

The Federal Circuit has made clear in its decisions in *Berkheimer*[2], *Aatrix Software*[3], and *Ancora Tech.*[4], that the question of whether something is conventional, well-known, or routine is a question of fact. This all follows the 2018 *Berkheimer* decision, where the court declared at Step 2 that "*[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact*. Any fact, such as this one, that is pertinent to the invalidity conclusion must be ***proven by clear and convincing evidence***." *Berkheimer*, 881 F.3d at 1368 (emphasis added); *see also Aatrix Software, Inc.,* 882 F.3d at 1128 ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 Fed. Appx. 989, 2018 U.S. App. LEXIS 3779, *5 (Fed. Cir. Feb. 16, 2018) ("We have held that 'whether a claim element or combination of elements is well-understood, routine and

---

[2] *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *pet. for r'hrg en banc denied*, 890 F.3d 1369 (2018); *pet. for cert. filed* (U.S. Sep. 28, 2018) (No.18-415).

[3] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), *pet. for r'hrg en banc denied*, 890 F.3d 1354 (2018).

[4] *Ancora Tech., Inc. v. HTC Am., Inc.*, No. 2018-1404 (Fed. Cir. Nov. 16, 2018); *see* Notice of Supplemental Authority at Dkt. No. 28.

W.D. TEX. NO. 5:18-CV-00718-XR                                                                            PAGE |4
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S OPPOSED MOTION TO STRIKE THE EXPERT DECLARATION OF IVAN ZATKOVICH**

conventional to a skilled artisan in the relevant field is a question of fact.'") (*quoting Berkheimer*, 881 F.3d at 1368).  While courts had routinely ruled on § 101 motions under Fed. R. Civ. Proc. 12(b)(6) before, that was *before Berkheimer* and its developing progeny and only in cases where there was no question of fact regarding whether the technologies employed were used in a conventional, routine, or well-understood manner.

## III.   ARGUMENT

The inclusion of the Zatkovich Declaration in support of Ubiquitous' Opposition to the Motion to Dismiss was necessary because CPS Energy made it so.  CPS Energy's attack on the eligibility of the claims of the Patents-in-Suit required Ubiquitous to respond by rebutting CPS Energy's bald proclamations.  CPS Energy tries to avoid a factual dispute on the issues of what was conventional, routine, and well-understood in 2004 by relying solely on attorney argument concerning what the patent specification discloses.  Using that argument, CPS Energy concludes that all the technologies employed by Ubiquitous were used in a way that was conventional at the time.  Ubiquitous responded with evidence that is central to Ubiquitous' claims—the Zatkovich Declaration—which dispels this attorney argument.  That declaration cites extensively to the specification of the Patents-in-Suit and demonstrates that CPS Energy's broad statements on what was conventional in 2004 are untrue.

### A.   THE COURT SHOULD NOT STRIKE THE ZATKOVICH DECLARATION BECAUSE IT RELIES ALMOST EXCLUSIVELY ON THE SPECIFICATION OF THE PATENTS-IN-SUIT AND COUNTERS CPS ENERGY'S ATTORNEY ARGUMENT BY GIVING THE PERSPECTIVE OF A SKILLED ARTISAN.

Defendant states that "given that the only material that CPS Energy cites, considers, or analyzes in the Motion to Dismiss is material within the Complaint, it is properly postured as a Rule 12 motion and should not be converted to a Rule 56 summary judgment motion." Motion to Strike, at p. 3.  While this may seem true at first glance, it really is not.  At the outset, deciding a

motion to dismiss on § 101 grounds requires understanding of what the claims mean and how they would be understood by a POSITA at the time of the priority date of the Patents-in-Suit. *See Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-1274 (Fed. Cir. 2012) ("it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."); *Board of Regents v. Ethicon, Inc.*, No. 1-17-CV-1084-LY, 2018 U.S. Dist. LEXIS 203914, *3-4 (W.D. Tex. Nov. 30, 2018) (meaning and scope of claim terms is determined from the point of view of a POSITA who has read the entire patent) (*citing Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1317 (Fed. Cir. 2005)). That analysis is a fundamental part of the claim construction process. *Board of Regents*, 2018 U.S. Dist. LEXIS 203914 at *6 ("expert testimony may aid the court in determining the particular meaning of a term in the pertinent field") (citing *Phillips*, 415 F.3d at 1318).[5]

As noted above, CPS Energy makes broad conclusions using solely attorney argument to support its conclusions, thereby seeking to avoid factual issues while asking the Court to adopt its view of the Patents-in-Suit.[6] One of those conclusions is that "[t]here is simply nothing 'inventive' about using a known process (i.e., monitoring and controlling appliances) and implementing it

---

[5] Notably, CPS Energy continues to take no positions on claim construction with the exception of providing a construction of "SMS (i.e., text messaging)" for the term "simple message service." *See* Dkt. No. 26, fn. 4.

[6] Ubiquitous recognizes that CPS Energy does cite to the specification for certain of its allegations regarding conventionality, but even for those few, it does so partially and without the context of a POSITA. For instance, CPS Energy states that "the claimed 'base unit' unit consists of 'either off-the-shelf integrated circuits combined with discreet components or complete modules provided by other original equipment manufacturers.' Motion to Dismiss, p. 17 (citing '935 Patent at 4:53-56). But it is only "[t]he subsystems contained within the base control unit" that can comprise off the shelf components. *Id.* The "base control unit" itself is much more than this, as described in the three pages of the specification that follow the text cited by CPS Energy. '935 Patent, 4:46-11:28 (describing the "base control unit" and the proprietary aspects of it in extensive detail with reference to Figure 4).

through the use of a generic remote device that can receive data from and transmit data to another device that is connected to and control a thermostat." Motion to Dismiss, at p. 18. Another is that the Ubiquitous Claims include only "the presence of generic hardware and software . . . ." *Id.*, at p. 19. As yet another example, CPS Energy broadly concludes that "[t]he specification describes the claimed elements, such as a base unit and remote unit, as existing in the prior art and unbounded by any limitations . . . ." *Id.* p. 20. Finally, according to CPS Energy, "the patents' claims do not describe any particular non-conventional *mechanism* . . . ." *Id.*

None of these broad statements cite to anything—they are pure attorney argument that CPS Energy asks the Court to accept in lieu of evidence on those points. By taking this approach, CPS Energy has effectively gone outside the complaint because there is no basis for these statements. Thus, CPS Energy has opened the door on the perspective of a POSITA on the specification and its teachings, the history of the relevant technology at the time, the technical problems in the field in 2004, and whether the Patents-in-Suit disclose conventional, routine, and well-known uses of the existing technologies.

This is why the Zatkovich Declaration is relevant and should be considered by this Court. The declaration is central to the claims at issue (invalidity particularly). The Zatkovich Declaration cites extensively and almost exclusively to the specification of the Patents-in-Suit to explain exactly what the disclosures in the specification would have meant to a skilled artisan in 2004 by:

> (1) providing a "overview of the Field of Invention, Background, and Discussion sections of those patents." Zatkovich Declaration, at p. 31 (introducing pages 31-50, which provide the same with extensive and countless citations to the specification);
>
> (2) giving backdrop and additional information on the technical problems identified in the specification and how those shortcomings are overcome by the Patents-in-Suit. Zatkovich Declaration, at p. 59-67 (including innumerable citations to the specification);

    (3) "expand[ing] on topics mentioned within the Patents-in-Suit so that the relevance of those topics to the Patents-in-Suit and the Ubiquitous Claims is apparent and so these concepts are understood within an appropriate context." Zatkovich Declaration, at p. 12 (introducing pages 12-32); and

    (4) explaining that "the Patents-in-Suit disclose and claim inventive concepts in the way the Alice test uses that term and disclose and claim unconventional uses for existing technology Zatkovich Declaration, at p. 75 (introducing pages 74-94 and relying on Section IV ("Technical Background") and Section V ("Overview of the Patents-in-Suit") to explain the unconventional uses through the lens of a skilled artisan in 2004).

It was CPS Energy that chose to make broad statements on whether the technologies employed in the Patents-in-Suit were conventional, routine, and well-understood. It chose to do that with attorney argument, and now it has opened the door to real evidence on those issues. The Zatkovich Declaration provides that evidence supported with explicit and detailed references to the specification. The Zatkovich Declaration supports Ubiquitous' rebuttal of CPS Energy's Motion to Dismiss by identifying and clarifying where in the Patents-in-Suit the evidence of patent eligibility exists, and it counters CPS Energy's attorney argument on those related points. CPS Energy has made the Zatkovich Declaration "central" to Ubiquitous' claim such that it may be considered by the Court, as either a Rule 12(b)(6) motion or after conversion to a motion for summary judgment. *See Rodriguez*, 310 Fed. Appx. at 626 ("A district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." citing *Scanlan*, 343 F.3d at 536).

    B.   **CPS ENERGY'S MOTION TO STRIKE IS NOT SUPPORTED BY ANALOGOUS CASES.**

The Court has before it a case with duly-issued patents that are presumed to be valid (*see* 35 U.S.C. § 282(a)), along with cogent arguments supporting their patent eligibility, and an expert declaration in support. CPS Energy provides only attorney argument that is conclusory, over-simplified, unsupported by expert analysis, and, most importantly, unsupported by the facts as contained in the complaint and its exhibits. CPS Energy ignores all of this in its Motion to Strike,

and instead, it focuses on a set of inapplicable and out-of-date cases that do not stand for the broad propositions for which they are offered.

*First*, Courts in this District routinely convert Rule 12(b)(6) motions to summary judgment motions when evidence outside the pleadings were presented, so there is nothing groundbreaking about this Court doing that. *See Shelton*, 2018 U.S. Dist. LEXIS 118547 at *3-4; *Martinez*, 104 F. Supp. 3d at 839 n.1; *WorkSTEPS, Inc.*, 88 F. Supp. 3d at 739 (W.D. Tex. 2015); *Wilkens*, 2010 U.S. Dist. LEXIS 10419 at *8.

*Second*, Section 101 motions in patent cases are unique in that they explicitly (according to *Berkheimer* and its progeny) involve factual questions. Recognizing this, courts in this Circuit have converted Rule 12(b)(6) motions to summary judgment motions under Fed. R. Civ. Proc. 56 where evidence outside the complaint was submitted for consideration under the Section 101 inquiry. *Orostream LLC v. ABS-CBN Int'l*, Nos. 2:15-cv-248-JRG (Lead Case), 2:15-cv-251-JRG, 2015 U.S. Dist. LEXIS 134199, *3-*4 (E.D. Tex. Oct. 1, 2015) ("Because the parties have submitted, and the Court has considered, matters outside of the pleadings (i.e. expert affidavit), pursuant to Rule 12(d), the Court converted the Motions to motions for summary judgment under Rule 56."); *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 142 F. Supp. 3d 510, 512 (E.D. Tex. 2015), *aff'd sub nom, ContentGuard Holdings, Inc. v. Apple Inc.*, 701 Fed. Appx. 957 (Fed. Cir. 2017) (after claim construction, motions for judgment on the pleadings for dismissal based upon 35 U.S.C. § 101 converted to summary judgment motions after parties attached evidence outside of the scope a 12(c) motion); *eDekka LLC v. 3Balls.com, Inc.*, Nos. 2:15-cv-00541 JRG, 2:15-cv-00585 JRG, 2015 WL 5579840, *1 (E.D. Tex. Sep. 21, 2015) (motions for judgment on the pleadings for dismissal based upon 35 U.S.C. § 101 converted to summary judgment motions after parties attached evidence outside of the pleadings that the court considered); *BSG Tech LLC*

*v. Autozone, Inc.,* Ns. 2:16-CV-529 (LEAD CASE), 2:16-CV-530, 2:16-CV-532, 2017 U.S. Dist. LEXIS 96276, *10 (E.D. Tex. Mar. 30, 2017), *aff'd sub nom, BSG Tech LLC v. Buyseasons, Inc.,* 899 F.3d 1281 (Fed. Cir. 2018) (motion to dismiss converted to summary judgment motion after court considered declaration introduced by plaintiff).

***Third***, the cases CPS Energy cites in support of its Motion to Strike do not compel the result desired (striking the Zatkovich Declaration) because the cases are not analogous to the unique circumstances here. At the outset, CPS Energy's reliance on these cases, which were all in the context of either Fed. R. Civ. Proc. 12(b)(6) or Fed. R. Civ. Proc. 12(c), are self-affirming in that the courts in each of those cases did not convert the motions to a Rule 56 motion. In other words, these cases were all motions to dismiss or for judgment on the pleadings that were adjudicated as such and not converted summary judgment motions. Moreover, the plaintiffs in CPS Energy's cited cases did not argue that the particular evidence (though not in the complaint) was central to the claims. In this case, Ubiquitous has asked the Court to convert the motion to a summary judgment motion, *see* Ubiquitous Opposition, at p. 20, and it has argued that the evidence is central to the claims. *See, supra,* Section III (introduction and subsection A)

Each of the cases are additionally not analogous due to the particular facts and arguments at issue in each of them. For instance, the case of *Affinity Labs of Tex., LLC v. Amazon.com, Inc.* was issued well before *Berkheimer. See* 2015 U.S. Dist. LEXIS 77411 at *1. There, the court noted that it ***could*** consider the expert declaration submitted there, but it chose not to because "the [c]ourt [wa]s of the opinion that no factual issues [we]re present . . . ." *Id.* at *13 n.6. That patentee also did not request leave to amend its complaint. Here, there are undoubtedly factual issues and Ubiquitous has sought leave to amend. It is also important to note that, at that time, there was "no clear mandate from the Supreme Court or the Federal Circuit . . . as to whether the clear and

convincing evidentiary standard should be applied in a challenge to a patent's eligibility under §101." *Id.* at *12. The *Berkheimer* case has changed that. *See, supra,* Section II.B (citing *Berkheimer*, 881 F.3d at 1368).

*Hildebrandt v. Indianapolis Life Ins. Co.*, also relied on by CPS Energy, was not a Section 101 case, and nor did it concern patents. *See* 2009 U.S. Dist. LEXIS 27407, *20 n.4 (N.D. Tex. Mar. 30, 2009). Moreover, although the declaration submitted there was stricken, that court noted that it could not resolve the factual issues to which the declaration pertained, *id.*, at *20 n.4, and denied the defendants Rule 12(b)(6) motion with respect to the claims that the declaration supported (Counts 8-13). *Id.* at *22-37. And the Court applied Arizona law to Counts 8-13 (the Counts to which the declaration related), not the laws of Texas. *Id.* at *12-13. Additionally, the complainant also did not request leave to amend like Ubiquitous does here. *See, generally, Hildebrandt*. Similarly, *Creative Realty Inc. v. HD Supply Waterworks Grp. Inc.* is also of no moment here and had nothing to do with patents. 2014 U.S. Dist. LEXIS 32300 (W.D. La. Mar. 12, 2014). Moreover, the subject declarations contained plainly false information that was contradicted by the public record, *see, id.* at *13 n.5, and the plaintiffs did not argue that the evidence was central to their claims or seek leave to amend to include it. *See, generally, Creative Realty*. The issue there was also whether the plaintiffs due process rights were violated, which is a purely legal question. *Id.* at *6-7.

CPS Energy's *Gines v. Horton* case was also not a patent case, and the plaintiff did not seek leave to amend (and had in fact already amended once to no avail). *See* 699 F.3d 812, 820 (5th Cir. 2012). Lastly, *Tyler v. Liberty Mut. Ins. Co.*, another non-patent case, is unhelpful. *See* 2018 U.S. Dist. LEXIS 139609 (N.D. Tex. Aug. 17, 2018). In that case, the plaintiff "did not file a response to [defendant's] motions; nor did it request to amend its pleadings in the event the court

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S OPPOSED MOTION TO STRIKE THE EXPERT DECLARATION OF IVAN ZATKOVICH**

determined that it failed to state a claim." In the end, these cases are inapposite to the facts of the case at hand and do not compel the Court to exclude the Zatkovich Declaration.

### C. UBIQUITOUS REQUESTS LEAVE TO AMEND ITS COMPLAINT IF DEFENDANT'S MOTION TO DISMISS IS GRANTED.

In the event that this Court determines that the Zatkovich Declaration may not be considered and grants CPS Energy's Motion to Dismiss, Ubiquitous requests the opportunity to amend the operative complaint (as requested by Ubiquitous in its Opposition to the Motion to Dismiss). Out of an abundance of caution, Ubiquitous also moves for leave to amend the complaint contemporaneously herewith.

## IV. CONCLUSION

For the reasons above, CPS Energy's Motion to Strike should be denied.

Dated: December 10, 2018                    Respectfully submitted,

                                            s/ *James F. McDonough, III*

                                            **WAYNE WRIGHT LLP**
                                            (Alexander) Wyatt Wright (TX 24037741)
                                            Attorney in Charge
                                            5707 W. Interstate 10
                                            San Antonio, Texas 78201
                                            Telephone: (210) 734-7077
                                            Facsimile: (210) 734-9965
                                            Email: wyatt@waynewright.com

                                            **HENINGER GARRISON DAVIS, LLC**
                                            James F. McDonough, III (GA 117088)*
                                            Jonathan R. Miller (GA 507179)*
                                            Travis E. Lynch (GA 162373)*
                                            3621 Vinings Slope, Suite 4320
                                            Atlanta, Georgia 30339
                                            Telephone: (404) 996-0869, -0863, -0867
                                            Facsimile: (205) 547-5504, -5506, -5515
                                            Email: jmcdonough@hgdlawfirm.com
                                            Email: jmiller@hgdlawfirm.com
                                            Email: tlynch@hgdlawfirm.com

                                            *Attorneys for Plaintiff*
                                            *Ubiquitous Connectivity, LP*

* admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of December, 2018, I caused to be electronically-filed the foregoing document with the Clerk of Court using the CM/ECF system, which caused it to be served on counsel who have appeared in this matter by electronic mail.

*/s/ James F. McDonough, III*
James F. McDonough, III