**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UBIQUITOUS CONNECTIVITY, LP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-18-CV-00718-XR** |
| | § | |
| **CITY OF SAN ANTONIO d/b/a CPS** | § | |
| **ENERGY,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

On this date, the Court considered the motion to dismiss under Rule 12(b)(6) filed by Defendant City of San Antonio (referred to herein as CPS Energy) in this patent infringement case, as well as the City's motion to strike Plaintiff's expert affidavit, and Plaintiff's motion for leave to file an amended complaint. After careful consideration, the Court grants the motion to strike the expert affidavit (docket no. 29), grants Plaintiff's motion for leave to amend (docket no. 32), and denies the motion to dismiss under Rule 12(b)(6) (docket no. 17).

### Background

Plaintiff Ubiquitous Connectivity filed this patent infringement action to stop the alleged infringement of Plaintiff's Patents Nos. 8,064,935 ("the '935 patent") and 9,602,655 ("the '655 patent"). The '935 and '655 patents are each entitled "Ubiquitous Connectivity and Control System for Remote Locations." The Abstract for both patents describes "[a] thermostat control system for monitoring and controlling environmental characteristics of a building includes [*sic*] a base station unit and a remote access unit continuously interfacing through instant wireless private direct connectivity. The system also includes a plurality of sensors that measure the environmental characteristics and provide the thermostat unit with the measurements."

Plaintiff alleges that Defendant ships, distributes, makes, uses, offers for sale, sells, and/or advertises infringing products under the "Total Connect Comfort" and "Home Manager" branded systems, and that these violate its patents for a "ubiquitous connectivity and control system." Specifically, Ubiquitous alleges that CPS Energy operates a website and offers its customers the ability to download the Total Connect Comfort app, which allows users to control their Honeywell devices remotely from a mobile device such as, but not limited to, an iPhone, iPad, or Android device. CPS Energy advertises the app as allowing "users to remotely monitor and manage their heating and cooling system – at any time, from anywhere." Plaintiff further alleges that "CPS Energy offers its customers the ability to download CPS Energy's Home Manager app, which allows users to control their Radio thermostat devices (Model CT32 and Model CT80) remotely from a mobile device such as, but not limited to, an iPhone, iPad, or Android device." The description of the app states that customers "will be able to remotely control your HVAC, water heater, and pool pump, and monitor your usage in real time."

Plaintiff alleges upon information and belief that the Home Manager and Total Connect Comfort apps: (1) allow users to change the settings of their smart thermostats from their mobile devices; (2) allow users to set heating and cooling schedules for the smart thermostats from their mobile devices; (3) provide users with usage data related to the smart thermostat system; and (4) allow users to utilize geoservices to operate the system based on location. Plaintiff further alleges on information and belief that the apps "also include a feature known as geo-fencing, which uses the GPS location on a user's mobile to set location based triggered events" and "the Honeywell Lyric T5 and Radio thermostat devices may also receive current room temperature readings from a thermostat and send control instructions, *i.e.* increasing or decreasing room temperature, to the user's HVAC system."

Plaintiff alleges that Defendant has infringed and continues to infringe one or more claims of the '935 Patent, including Claim 19, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices, including at least the Accused Products and Services, that form a wirelessly controllable smart thermostat system that incorporates a base unit (Honeywell and Radio smart thermostats) interfaced with an environmental device (thermostat). Plaintiff alleges that Defendant has infringed and continues to infringe one or more claims of the '655 Patent, including at least Claim 1, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices, including at least the Accused Products and Services, that form a remotely controllable smart thermostat system. Ubiquitous seeks injunctive relief and monetary damages.

CPS Energy responded to the Complaint by filing a motion to dismiss for failure to state a claim (docket no. 17), as well as an answer and counterclaim (docket no. 18). The motion to dismiss raises an *Alice/Mayo* patent eligibility issue, arguing that the patents are invalid under 35 U.S.C. § 101 as being directed to ineligible subject matter. Section 101 specifies four independent categories of inventions or discoveries that are eligible for protection: processes, machines, manufactures, and compositions of matter, as well as "any new and useful improvement thereof." 35 U.S.C. § 101. Plaintiff Ubiquitous asserts that the elements of the claims of the patents-in-suit describe a patent-eligible "machine." Docket no. 26 at 16. The Supreme Court's precedents provide three specific exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Defendant CPS contends that the Patents-in-Suit impermissibly attempt to patent abstract ideas – monitoring and controlling devices – and are therefore ineligible.[1]

---

[1] The parties agreed to expand the standard briefing schedule and asked the Court to stay the case pending a ruling on the motion to dismiss. The Court stayed and administratively closed the case. Since that time, the parties have

Plaintiff contends that the Patents-in-Suit are not directed to an abstract idea, and that they, even if they are directed to abstract ideas, involve inventive concepts making them patent eligible.

In its response to the City's motion to dismiss, Plaintiff provided evidence outside the pleadings, including the lengthy Declaration of Ivan Zatkovich (an expert). The City then moved to strike the expert Declaration of Zatkovich as extraneous material outside the proper scope of a Rule 12(b)(6) motion. The Court agrees that the Declaration should be stricken as outside the scope of a Rule 12(b)(6) motion, as the Court is not converting the motion to a motion for summary judgment. *See Inclusive Cmtys. Project Inc. v. Lincoln Prop. Co*., 920 F.3d 890, 900 (5th Cir. 2019) (when evaluating a 12(b)(6) motion a court is limited to the "facts set forth in the complaint, documents attached to the complaint" and documents attached by the defendant to its motion to dismiss that are referenced in the plaintiff's complaint).

However, Ubiquitous also filed a motion seeking leave to amend its complaint if the motion to dismiss is granted. Ubiquitous contends that the disputed issue of patentability is a question of law that has factual underpinnings related to whether the technologies employed in the Patents-in-Suit were conventional, routine, and well-known, and it has refuted CPS's position via arguments and the Zatkovich Declaration. Ubiquitous asks that, if the Court finds that the Declaration must be excluded, it be permitted to file an Amended Complaint that incorporates the Declaration and specific pleadings related to the technological area to which the Patents-in-Suit are directed, the technological problems solved by the patents, the technological solutions presented by the Patents-in Suit, the inventive concepts disclosed in the claims of the Patents-in-Suit, including the technologies used and the unconventional, unusual, and obscure nature of

---

filed numerous notices of supplemental authority (*e.g.*, docket nos. 28, 37, 38, 39, 40, 41 & 42), which the Court has considered.

their uses. As discussed below, the Court finds that leave should be granted, and thus will consider the allegations in the Amended Complaint in deciding the motion to dismiss.

**Analysis**

### A. Legal Standard

In considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the Complaint and take them in the light most favorable to the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court examines the well pled factual allegations to determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Further, as noted, the Court is limited to an examination of the "facts set forth in the complaint, documents attached to the complaint" and documents attached by the defendant to its motion to dismiss that are referenced in the plaintiff's complaint. *Inclusive Cmtys. Project*, 920 F.3d at 900. Plaintiff included copies of the two patents as exhibits to the Complaint.

Patentability under § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

Patent eligibility can sometimes be determined at the Rule 12(b)(6) stage. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). But this is true only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law. *Id.* Indeed, "plausible factual allegations may preclude dismissing a

case under § 101 where, for example, 'nothing on th[e] record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" *Id.* (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)). While the ultimate determination of eligibility under § 101 is a question of law, underlying determinations such as whether the claim elements or the claimed combination are well-understood, routine, and conventional is a question of fact. *Id.* at 1128. The Federal Circuit has held that patentees who adequately allege their claims contain inventive concepts sufficient to "transform" the claimed abstract idea into a patent-eligible application survive a § 101 eligibility analysis under Rule 12(b)(6). *Aatrix Software*, 882 F.3d 12 1126-27.

If there are claim construction disputes at the Rule 12(b)(6) stage, the court must proceed either by adopting the non-moving party's constructions, or by resolving the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction. *Aatrix Software*, 882 F.3d at 1125. Ubiquitous contends that there are claim construction disputes that preclude resolution of the 12(b)(6) motion. Docket no. 26 at 10. In response, CPS Energy contends that the Court should construe the terms in the manner most favorable to Ubiquitous (*i.e.*, using its proposed constructions), but that even so dismissal under Rule 12(b)(6) is warranted. The Court will adopt Ubiquitous's proposed constructions for purposes of the motion. *See Two-Way Media Ltd. v. Comcast Cable Comms., LLC*, 874 F.3d 1329, 1336 (Fed. Cir. 2017).

### B. CPS Energy's Motion to Dismiss

CPS Energy argues that the patents-in-suit are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of monitoring and controlling appliances and do not include any inventive concept because they contain only well-understood, routine, and conventional

6

features. CPS Energy contends that the only two claims specifically referenced in the Complaint – Claim 19 of the '935 Patent and Claim 1 of the '655 Patent – are representative.

Claim 19 of the '935 patent claims:

A communication system having wireless connectivity, the communication system comprising:

a base unit operatively interfaced with an environmental device, and configured to receive a current status of an environmental device;

a transmitter associated with said base unit, and configured to send a first message to a remote unit having wireless connectivity, wherein the first message is a wireless message including the current status of the environmental device;

a receiver associated with said base unit, and configured to receive a second message from the remote unit, wherein the second message is a wireless message including a command for the environmental device; and

a controller operatively associated with the base unit and operatively connection with the environmental device, and configured to send the command to the environmental device.

Claim 1 of the '655 patent claims:

A base unit configured to communicate with an environmental device and to communicate with a cellular remote unit having wireless connectivity capable of communicating from a geographically remote location, the base unit comprising:

a first communication interface configured to receive environmental information from the environmental device and to send a control instruction to the environmental device;

a wireless communication interface configured to send a first message to the cellular remote unit via a cellular communication network and to receive a second message from the cellular remote unit via the cellular communications network,

wherein the first message is a first digital communications message including a representation of the environmental information, and

wherein the second message is a second digital communications message including a command regarding the environmental device; and

a microcontroller configured to process the second message, to provide the control instruction based on the command, and to send the control instruction to the environmental device via the first communication interface, and

wherein the command is for the base unit initiated by a user from the cellular remote unit, and

wherein the control instruction to the environmental device is associated with the command for the base unit, wherein the cellular remote unit is configured to determine position data of the cellular remote unit, and determine when the cellular remote unit is outside a geo-fence, wherein the cellular remote unit is configured to transmit a notification via a simple message service responsive to determining that the cellular remote unit is outside of the geo-fence.

CPS Energy argues that (1) the claims of the patents are directed to the abstract idea of monitoring and controlling appliances; (2) sending electronic messages between two devices to remotely monitor and control a thermostat is not a technological improvement, an inventive way of applying conventional technology, or even new; (3) none of the claims recite any specific hardware or software; instead, the patents' shared specification discloses only that the alleged invention uses generic computer components and software to perform conventional activities; and (4) the patents do no more than withdraw a basic idea (monitoring and controlling appliances) from the public domain without disclosing any particularized application of that idea.

Ubiquitous disputes that Claim 19 of the '935 Patent and Claim 1 of the '655 Patent are representative. Ubiquitous states that "[o]ne claim from each of the patents is listed in the Complaint because that is what the plausibility standard of *Iqbal/Twombly* requires." Docket no. 26 at 9 n.6. Ubiquitous argues that the other independent and dependent claims are distinct and claim unique limitations as compared to Claim 19 and Claim 1, and it offers Appendix B outlining each of the differences and unique elements required in the claims. Docket no. 26 at 9, Appendix B.

Ubiquitous argues that the '935 and '635 Patents are not directed to an abstract concept but to the creation of "on-demand bidirectional communication" technologies that have various features (as identified individually by each claim). Docket no. 26 at 9. Ubiquitous points to the specification, noting that the "Field of Invention" section of the patents discloses that "the system relates to on demand bidirectional communication between a remote access unit and a multifunctional base control unit in a geographically remote location." '655 Patent at 1:22-26. Ubiquitous contends that the claims are not, as CPS characterizes them, directed generally to "monitoring and controlling devices," and that CPS mistakenly applies an inappropriate level of abstraction such that its description of the claims is untethered from the language of the claims. Docket no. 26 at 11. Ubiquitous asserts that the "[t]he claims here cover specific devices configured in specific ways, to create session based bidirectional communications between a multifunctional base unit and a cellphone, which were otherwise unable to communicate." Docket no. 26 at 11.

Ubiquitous further asserts that there are factual disputes as to whether the claims were well understood, routine, and conventional that would preclude a decision on the § 101 issue at step 2 of the analysis. Ubiquitous contends that "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination" and "goes beyond what was simply known in the prior art." Ubiquitous argues that the patents provide a solution to what was a technical problem in the year 2004—existing communication system technologies could not facilitate on-demand bilateral communications between a cellphone and conventional "base unit" components in a network, and its solution was integrating cellular, user-friendly two-way communications into a base unit, which is "far from the mere provision of 'remote access' to which CPS tries to limit the inventions." Docket no. 26

at 6. Ubiquitous contends that this is a factual dispute as to which it has provided an expert declaration or that would be sufficiently alleged in its amended complaint to survive dismissal.

i.   *Alice* step one – abstract idea

CPS Energy contends that the patents are directed to an unpatentable abstract idea because they claim nothing more than the longstanding, routine, and conventional concept of monitoring and controlling appliances. The Supreme Court has not established a definitive rule to determine what constitutes an abstract idea at the first step. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Supreme Court has recognized, however, that fundamental economic practices, methods of organizing human activity, and mathematical algorithms are abstract ideas. Courts must be careful to avoid oversimplifying the claims. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). To evaluate whether an invention is directed to an "abstract idea," courts "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC*, 822 F.3d at 1334.

In *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017), the Federal Circuit held that at step one we construe the claims in their entirety "to ascertain whether their character as a whole is directed to excluded subject matter." "We look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Id.* Claims reciting methods using results-based functional language such as "controlling" and "monitoring" without describing how to achieve these results in a non-abstract way remain directed to abstract concepts. *Id.*

Even when the claims require concrete, tangible components such as telephones and servers, they must do more than provide a generic environment in which to carry out the abstract idea. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320 (Fed. Cir. 2016) (citing *TLI Comms.*, 823 F.3d at 611). Thus, stating that an abstract idea or function is to be performed "on a computer" or "on the internet" does not change its abstract character. *See Two-Way Media*, 874 F.3d at 1338 ("Merely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention."). The claims must demonstrate more than the use of conventional computer and network components operating according to their ordinary functions to achieve functional results. *Id.*

The Federal Circuit has found claims relating to monitoring and displaying information to be directed to an abstract idea. *See Gaelco S.A. v. Arachnid 360, LLC*, 293 F. Supp. 3d 783, 780-90 (N.D. Ill. 2017) (listing cases). In *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1351-53 (Fed. Cir. 2016), it found that claims directed to methods and systems of real-time monitoring of an electric power grid by collecting data from multiple sources, analyzing it, and displaying results were directed to an abstract concept. Courts have also found that the fact that monitoring is conducted remotely does not make it non-abstract. *Gaelco*, 293 F. Supp. 3d at 792 (citing cases). In *JOAO Control & Monitoring Systems, LLC v. Telular Corporation*, 173 F. Supp. 3d 717 (N.D. Ill. 2016), the court found that apparatuses and methods claims for monitoring and controlling property remotely through a computer network and the Internet were directed to abstract concepts. The patents were directed to "allowing owners, occupants and/or other authorized individuals to exercise and/or provide control, monitoring and/or security functions over [vehicles and] premises, from a remote location and at any time." Thus, the claims

of one patent were directed to a monitoring apparatus for receiving and transmitting video information from a vehicle or premises to a remote location composed of a processing device and a communication device. The claims of another patent were directed to a system for monitoring and controlling property from a remote location through a network of devices connected to the internet, involving an apparatus composed of processing devices that received and transmitted signals. The district court granted a 12(c) motion for judgment on the pleadings, finding that the patent did not purport to overcome a problem unique to computers, but "merely use conventional components to implement the allegedly novel concept of remote monitoring and control of property." *Id.* at 725. It concluded that the patents sought to protect the abstract idea of monitoring and controlling property and communicating this information through generic computer functions. *Id.* at 726.

Thus, these precedents support a conclusion that, viewed broadly, the Patents-in-Suit are directed to the abstract concepts of monitoring and controlling appliances. But at step one, courts may look at whether the asserted claims, considered as whole, assert a technological improvement rather than the use of existing technology as a tool to implement the abstract idea. Although the "Field of the Invention" section of the patent states generally that the invention "relates to a remote monitoring and control system for the environment," it then states, "[m]ore specifically, the system relates to on demand bidirectional communication between a remote access unit and a multifunctional base control unit in a geographically remote location."

The specification discusses then-existing technology and its drawbacks, stating, "The home control industry has taken steps toward ubiquitous connectivity and control over the years, but these steps have fallen short until now." It recognizes that "[b]idirectional communications have become more prevalent, allowing a remote operator to not only control but also to observe

and monitor the tasks performed by the automation system" and "[o]ne of the most relevant entries into the home automation universe is the cellular telephone." It then states that "[t]he present invention uses an on-demand digital, private, and direct communications interface to overcome the shortcomings and limitations of current communications interfacing."

In its proposed Amended Complaint, Ubiquitous contends that the technical problems solved by the patents were that then-existing OEM (original equipment manufacturers) base unit components were unable to facilitate bilateral communications with cellular telephones with then-existing communication system technologies. Ubiquitous asserts that, in 2004, OEM base unit systems were unable to create session-based communications with cellular telephones and that then-existing technology did not allow it, prior to the inventions of the '935 and '655 patents. It states that it overcame these problems with the technical solution of integrating user-friendly cellular two-way communications into a base unit at a remote location.

Ubiquitous asserts that although the context is in general appliance monitoring and environmental control, the patents are directed to a specific aspect of that industry – the integration of a previously incompatible device (a cell phone) into that space by implementing an innovative custom base unit. Ubiquitous further alleges that although the inventions can be created from available OEM components, those components could not simply be combined like puzzle pieces to achieve a functioning result; rather, the teachings of the patents would have to be followed in terms of configuration and other structural improvements within the base system. Ubiquitous asserts that its bidirectional on-demand communication interface, implemented through the base unit, was unconventional in that a cellular device was not used in this manner before and was also unique in that it enabled unsolicited messages and information to be sent from a remote monitored and controlled device to the user's cell phone. Thus, Ubiquitous argues,

the claims are not directed generally to environmental monitoring and control but to improved communications via a specific base unit.

This bidirectional communication aspect of the patents is shown in the claims, as Claim 1 of the '655 patent claims "a base unit configured to communicate with an environmental device and to communicate with a cellular remote unit having wireless connectivity capable of communicating from a geographically remote location" and then lists the components of the base unit, including communication interfaces and microcontroller. Claim 24 similarly claims a base unit configured to communicate with an environmental device and to communicate with a remote unit having wireless connectivity, including communication interfaces and a microcontroller.

Thus, in general the patents are directed to being able to both monitor and control appliances remotely within the same system (*i.e.*, using the same system configuration or architecture). The fact that the patents combine two abstract concepts (remotely monitoring and remotely controlling) does not render them non-abstract. However, Ubiquitous contends that the claims are directed to the specific device (base unit) or configuration that allows both monitoring and controlling within the same system using previously incompatible devices. The Court finds it a close call as to how to characterize what the claims are directed to, and the Court thus defers its consideration to step 2. *Cf. Bascom*, 827 F.3d at 1349 (when the claims and their specific limitations do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea, deferring consideration of the specific claim limitations' narrowing effect for step two).

ii.    *Alice* Step 2 – inventive concept

At step two, we must examine each claim both individually and 'as an ordered combination' to determine whether it contains an "inventive concept" sufficient to "transform" the claimed abstract idea into a patent-eligible application. *Alice Corp.*, 573 U.S. at 221. A claim that recites an abstract idea must include "additional features" to ensure "that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.*

Ubiquitous contends that at least three "inventive concepts" are embodied in the claims of the Patents-in-Suit at the "base unit," including (1) two-way digital communications with a cellular phone, (2) unsolicited event notification with a cellular telephone, and (3) geo-fence based communications within these constructs. Docket no. 26 at 6. It further argues that the combination of these three is indisputably inventive itself. Ubiquitous contend that there are at least fact issues in this regard making dismisal inappropriate. *See Berkheimer v. HP, Inc.*, 881 F.3d 1360 (Fed. Cir. 2018).

The second step of the test is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367. The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. *Id.* at 1368. Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known and disclosed in the prior art. *Id.* at 1369.

In *Berkheimer*, the court found the claims directed to the abstract idea of parsing, comparing, storing, and editing data. *Id.* at 1366. The plaintiff argued that the claimed combination improved computer functionality, and the specification discussed the state of the art

at the time the patent was filed and the purported improvements of the invention. *Id.*at 1369. The specification explained that the claimed improvement increased efficiency and computer functionality over the prior art systems and described an inventive feature that stored parsed data in a purportedly unconventional manner. *Id.* To the extent such improvements were captured in the claims, they were sufficient to create a factual dispute regarding whether the invention described well-understood, routine, and conventional activities. *Id.* Because certain claims recited a specific method of archiving that, according to the specification, provided benefits that improved computer functionality, the court found a fact issue as to whether they contained an inventive concept.

In *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), the patents were directed to systems and methods for designing, creating, and importing data into a viewable form on a computer so that a user can manipulate the form data and create viewable forms and reports. Because the system required a computer operating software, a means for viewing and changing data, and a means for viewing forms and reports, the court held that it was a tangible system. *Id.* at 1125. The court then held that the district court erred in denying the plaintiff's motion to amend the complaint, which contained allegations that, taken as true, would directly affect the patent eligibility analysis by raising factual disputes as to whether the term "data file" constituted an inventive concept, alone or in combination with other elements. *Id.* at 1126. The court noted that it has "held that patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Id.* at 1126-27.

In *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019), the court considered a patent on a way to automate the process of transferring data from a data capture device to a website, which it held was directed to an abstract idea. Nevertheless, the court reversed the

district court's dismissal based on its step 2 analysis. The court noted that the plaintiff contended that it was unconventional to separate the steps of capturing and publishing data so that each step would be performed by a different device linked via a wireless, paired connection; this "two-step, two-device structure [was] discussed throughout the shared specification"; and the plaintiff alleged that the structure provided various benefits over prior art systems. *Id.* at 1316. The district court had discounted these allegations because it required the plaintiff to cite instances in the patents demonstrating the inventive concepts, but the circuit court noted that in *Aatrix* it "repeatedly cited allegations in the *complaint* to conclude that the disputed claims were potentially inventive." *Id.* at 1317 (emphasis in original). It clarified that *Aatrix* does not hold that any allegations about inventiveness, wholly divorced from the claims or the specification, defeat a motion to dismiss, but that "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" as long as what makes the claims inventive is recited by the claims. *Id.* The court reiterated that "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)" and that factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage. *Id.* at 1318.

The Court further cited *BASCOM Global Internet Services, Inc. v. AT&T Mobility, Inc.*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) as particularly instructive insofar as it held that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." In *BASCOM*, the court held that the placement of a filtering tool "at a specific location," and configured in a particular way, evidenced an inventive concept because the limited record before it "did not demonstrate that the 'specific method of filtering' claimed 'ha[d] been conventional or generic." The *Cellspin* court similarly held that the plaintiff alleged

that using HTTP at a specific location (at the intermediary mobile device) was inventive and that establishing a paired connection before transmitting data was inventive, and there was no basis to say, at the pleadings stage, that these claimed techniques were well-known or conventional as a matter of law. Even assuming that Bluetooth was conventional at the time of the inventions, "implementing a well-known technique with particular devices in a specific combination" can be inventive. *Cellspin*, 927 F.3d at 1318. Because the plaintiff both alleged that its structure and combination of steps were inventive and pointed to evidence that the techniques had not been implemented in a similar way, the complaint sufficiently alleged that it claimed significantly more than the idea of capturing, transferring, or publishing data.

Given these precedents, the Court finds it appropriate to allow Ubiquitous to file its proposed Amended Complaint, which sufficiently alleges an inventive concept tied to the patents' claims to survive a Rule 12(b)(6) motion. The Amended Complaint alleges improvements in the prior art that could qualify as inventive concepts, and the bidirectional base unit is evident in the claims themselves.

This case is distinguishable from *JOAO Control & Monitoring Systems, LLC v. Telular Corporation*, 173 F. Supp. 3d 717 (N.D. Ill. 2016) because, although the apparatuses and methods claims for monitoring and controlling property remotely through a computer network and the Internet aimed to overcome certain disadvantages and drawbacks in the prior art, that invention did so simply by using the functional language of "allowing owners, occupants and/or other authorized individuals to exercise and/or provide control, monitoring and/or security functions over [vehicles and] premises, from a remote location and at any time." The district court granted a 12(c) motion for judgment on the pleadings, finding that the patent did not purport to overcome a problem unique to computers, but "merely use conventional components

to implement the allegedly novel concept of remote monitoring and control of property." *Id.* at 725. It concluded that the patents sought to protect the abstract idea of monitoring and controlling property and communicating this information through generic computer functions. *Id.* at 726. Apparently the purported innovations of the patent asserted by the plaintiff were that it allowed for monitoring or control without the need for a central security office, that it purported to solve a problem by allowing individuals to monitor their property remotely through the use of a computer network, that it was directed at controlling equipment remotely. *Id.* at 726-27. The patents also did not describe how the apparatus worked generally, other than the use of generic computer devices that transmit and receive data. *Id.* at 728. As such, they described only a network of generic devices to achieve the concept of monitoring and controlling property. There was no inventive concept alleged.

Here, in contrast, Ubiquitous has alleged an inventive concept sufficient to survive a 12(b)(6) motion. The proposed Amended Complaint alleges that the "base unit" in the system "could not have been purchased off-the-shelf, and required assembly of OEM components and coding to connect the components together to assemble a base unit that could interact with a cellphone" and "the use of a cellular phone to remotely control environmental devices was not generally available." It further alleges that "the combination of the base unit and cellular remote control into a system that allows for bidirectional communication between incompatible devices was indisputably not generic or conventional in 2004."

These allegations also distinguish this case from cases such as *Chamberlain Group, Inc. v. Techtronic Industries Co.*, 935 F.3d 1341 (Fed. Cir. 2019) and *Smart Systems Innovations, LLC v. Chicago Transit Authority*, 873 F.3d 1364 (Fed. Cir. 2017). In *Chamberlain*, the patent related to "an apparatus and method for communicating information about the status of a

movable barrier" and was directed to "wirelessly communicating status information about a system." "The only described difference between the prior art movable barrier operator systems and the claimed movable barrier operator system [was] that the status information about the system [was] communicated wirelessly." But transmitting data wirelessly was well understood in the art, the claims did not focus on a specific means or method that improved the relevant technology, and no other changes to the technology were claimed. Transmitting data wirelessly was not a technological improvement but rather simply a feature of wireless communication, which was already a basic, conventional form of communication at the time. Here, Ubiquitous claims to have done more than simply devising a wireless method of monitoring and controlling appliances.

In *Smart Systems*, the patents claimed a method of processing financial transactions and the plaintiff claimed its method was more convenient and improved prior systems by speeding up the process, but the claims were "not directed to a new type of bankcard, turnstile, or database, nor [did] the claims provide a method for processing data that improves existing technological processes." 873 F.3d at 1372. Ubiquitous alleges that its patent does not merely invoke existing conventional components used in their ordinary and conventional manner as tools to reach a result (monitoring and controlling), but that its patent uses a non-conventional bidirectional base unit configuration to improve the functioning of a technological system for monitoring and controlling environmental appliances.[2] The allegations in the Amended Complaint, which must

---

[2] *See Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2016) (citations omitted):

> We previously have held claims focused on various improvements of systems directed to patent eligible subject matter under § 101. For example, in *Enfish*, we held claims reciting a self-referential table for a computer database eligible under step one because the claims were directed to a particular improvement in the computer's functionality.

be accepted as true, are sufficient at the pleading stage to survive the motion to dismiss. Whether these allegations are borne out remains to be determined at summary judgment or trial.

**Conclusion**

Defendant's motion to strike the expert declaration (docket no. 29) is GRANTED.

Plaintiff's motion to amend complaint (docket no. 32) is GRANTED. The Clerk shall file the Amended Complaint.

Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) (docket no. 17) is DENIED.

The Clerk is directed to reopen this case.

SIGNED this 26th day of September, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

That the invention ran on a general-purpose computer did not doom the claims because unlike claims that merely "add[ ] conventional computer components to well-known business practices," the claimed self-referential table was "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory." In *Thales*, we held claims reciting an improved method of utilizing inertial sensors to determine position and orientation of an object on a moving platform not directed to an abstract idea or law of nature. We noted that even though the system used conventional sensors and a mathematical equation, the claims specified a particular configuration of the sensors and a particular method of utilizing the raw data that eliminated many of the complications inherent in conventional methods. In *Visual Memory*, we held claims directed to an improved computer memory system with programmable operational characteristics defined by the processor directed to patent-eligible subject matter. The claimed invention provided flexibility that prior art processors did not possess, and obviated the need to design a separate memory system for each type of processor. . . .