IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CHARLES SHAMOON, UBIQUITOUS CONNECTIVITY, LP,<br>*Plaintiffs*<br><br>-vs-<br><br>CITY OF SAN ANTONIO, by and through its agent, CITY PUBLIC SERVICE BOARD OF SAN ANTONIO, d/b/a CPS ENERGY,<br>*Defendant* | SA-18-CV-00718-XR |

# ORDER

On this date, the Court considered Defendant's Motion to Dismiss the Second Amended Complaint ("SAC") (ECF No. 91), Plaintiffs' response (ECF No. 93), Defendant's reply (ECF No. 94), and Plaintiff0's sur-reply (ECF No. 96). After careful consideration, the Court **GRANTS** the motion.

## BACKGROUND

**I. Patent-in-Suit**

This case involves allegations by Plaintiffs Charles Shamoon and Ubiquitous Connectivity, LP ("Plaintiffs") that the City of San Antoino d/b/a CPS Energy infringed its patent, United States Patent No. 9,602,655 ("'655 Patent"), directed to a system for monitoring and controlling the environmental characteristics of a building. ECF No. 89 ¶ 16.[1] The '655 Patent is entitled

---

[1] The case began over six years ago when Ubiquitous filed the initial complaint in January 2018, alleging infringement of United States Patent No. 8,064,935 ("'935 Patent") and the '655 Patent. ECF No. 1. After the Court denied Defendant's motion to dismiss on grounds of invalidity under 35 U.S.C. § 101, ECF No. 43, Ubiquitous filed an amended complaint. ECF No. 44. Before Defendant responded, the patents-in-suit were challenged in *inter partes* review before the Patent Trial and Appeal Board ("PTAB"), and so the Court stayed these proceedings. *See* October 11, 2019, Text Order. The PTAB held most of the patent claims invalid, but found that the challengers failed to show that claim 12 of the '935 Patent and claims 2, 9, and 11 of the '655 Patent were unpatentable. ECF No. 91 at 6. Ubiquitous appealed only the '935 Patent claims, and the Federal Circuit affirmed in August 2023. *See Ubiquitous*

1

"Ubiquitous Connectivity and Control System for Remote Locations." ECF No. 89-1 at 1. Its Abstract identifies the '655 Patent as:

> A thermostat control system for monitoring and controlling environmental characteristics of a building includes a base station unit and a remote access unit continuously interfacing through instant wireless private direct connectivity. The system also includes a plurality of sensors that measure the environmental characteristics and provide the thermostat unit with the measurements.

*Id.*

The '655 Patent describes and claims a remote access system where a base control unit, such as a thermostat, sends information about monitored environmental characteristics to the cellular remote unit, which alerts the remote owner and allows the owner to redefine acceptable environmental parameters. *Id.*, col. 13, 66–67, col. 14, 1–26. This two-way communication system allows the remote unit to send commands by "simple message service" to the base control unit to adjust these parameters when the cellular remote unit is outside a specific area. *Id.*

---

*Connectivity, LP v. Central Security Group – Nationwide, Inc.*, No. 21-1813, 2023 WL 5031508 (Fed. Cir. Aug. 8, 2023).

During this time—in August 2022—Shamoon attempted to substitute himself as Plaintiff in this case, which the Court granted in part and denied in part. ECF No. 69. While Shamoon was added as a Plaintiff, Ubiquitous remained. *Id.* Then, in December 2022, the Court dismissed without prejudice claims brought by Ubiquitous for failure to obtain counsel. *See* December 15, 2022, Text Order. At the time, the only live claims before the Court were Shamoon's.

In July 2024—nearly a year after the Federal Circuit affirmed the PTAB—the Court ordered the parties to advise "what remains to be done in this case." ECF No. 82 at 1. In response, Shamoon sought leave to file a second amended complaint (1) withdrawing Shamoon and replacing him with Ubiquitous and (2) narrowing the asserted claims to claim 12 of the 35 Patent and claims 2, 9, and 11 of the 655 Patent. ECF No. 87 at 9.

The Court declined this invitation, and gave "Shamoon a choice" to "either (1) inform the Court that he intends to voluntarily dismiss his claims with prejudice, or (2) file a second amended complaint adding Ubiquitous as a plaintiff to this suit and narrowing the asserted claims." ECF No. 88 at 2.

On September 5, 2024, Plaintiffs Shamoon and Ubiquitous—both represented by counsel—filed the SAC. ECF No. 89.

2

Claim 1 of the patent recites:[2]

A *base unit* configured to communicate with an *environmental device* and to communicate with a *cellular remote unit* having wireless connectivity capable of communicating from a geographically remote location, the base unit comprising:

a first communication interface configured to receive environmental information from the environmental device and to send a control instruction to the environmental device;

a wireless communication interface configured to send a first message to the cellular remote unit via a cellular communications network and to receive a second message from the cellular remote unit via the cellular communications network, wherein the first message is a first digital communications message including a representation of the environmental information, and wherein the second message is a second digital communications message including a command regarding the environmental device;

and a microcontroller configured to process the second message, to provide the control instruction based on the command, and to send the control instruction to the environmental device via the first communication interface, and wherein the command is for the base unit initiated by a user from the cellular remote unit, and wherein the control instruction to the environmental device is associated with the command for the base unit, wherein the cellular remote unit is configured to determine position data of the cellular remote unit, and determine when the cellular remote unit is outside a geo-fence, *wherein the cellular remote unit is configured to transmit a notification via a simple message service responsive* to determining that the cellular remote unit is outside of the geo-fence.

*Id.*, col. 13, 57–67, col. 14, 1–27 (emphasis added).

Patent '655 attempts to solve the problem of monitoring and adjusting a thermostat remotely in response to changing environmental characteristics. *Id.*, col. 1, 34–37, 48–53. Previously, a typical thermostat monitored a building's temperature and regulated a heating/cooling appliance to keep the building within a predefined temperature range. *Id.*, col. 1, 37–41. But remote and custom modification of the temperature may be preferable, especially in areas where a building is in a volatile climatic region, is not able to maintain the full functions of appliances year round, and where energy conservation is key. *Id.*, col. 1, 42–44, col. 14, 27–30, 44–46, 55–57.

---

[2] Plaintiffs allege infringement of claims 2, 9, and 11 of the '655 Patent, which are dependent on claim 1 and merely add "energy conservation" limitations. Accordingly, claim 1 is representative.

## II.   Alleged Infringing Products

Plaintiffs identify the infringing products as Defendant's "Total Connect Comfort" and "Home Manager" branded systems ("Accused Products"). ECF No. 89 ¶ 30. The Accused Products allows users to control their building thermostat devices—Honeywell and Radio smart thermostats—remotely from a mobile device such as an iPhone, iPad, or Android device. *Id.*

Plaintiffs allege that the Accused Products allow users to (1) change the settings of their smart thermostats from their mobile devices and (2) set heating and cooling schedules for the smart thermostats from their mobile devices, by (3) providing users with usage data related to the smart thermostats system; and (4) utilizing geoservices to operate the system based on location. *Id.* ¶ 37.

Plaintiffs assert that Defendant has directly infringed "literally and/or through the doctrine of equivalents," at least three claims—2, 9, and 11—of the '655 Patent, by making, using importing, selling, or offering to sell the Accused Products. *Id.* ¶ 43. Plaintiffs also assert that Defendant has indirectly infringed the '655 Patent through inducement and has engaged in contributory infringement. *Id.* ¶¶ 45, 50.

On October 21, 2024, Defendant moved to dismiss Plaintiffs' claims with prejudice. ECF No. 91. This matter is now ripe for consideration.

## ANALYSIS

### I.   Legal Standard

While Federal Circuit law governs substantive issues of patent law, the law of the respective regional circuit governs the procedural issue whether to grant or deny a motion to dismiss. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018); *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d 905, 910 (W.D. Tex. 2022).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted).

Determining plausibility is a "context-specific task," that courts perform in light of their "judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). In patent cases, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8*, 4 F.4th at 1353; *see also U.S. ex rel. Grubbs v.*

*Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (recognizing that some claims simply require less factual detail to state a claim upon which courts may grant relief).

An element-by-element pleading of fact for each asserted patent claim is not required. *Sesaco Corp. v. Equinom Ltd.*, No. 1:20-CV-1053-LY, 2022 WL 1546642, at *1 (W.D. Tex. Mar. 11, 2022); *Bot M8*, 4 F.4th at 1352. But, "[t]o state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims." *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). But "the complaint must support . . . entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation." *Vervain, LLC v. Michron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022) (quoting *Bot M8*, 4 F.4th at 1353).

II. **Analysis**

   A. **Rule 12(b)(6)**

The central issue is whether Plaintiffs have alleged sufficient facts to survive a Rule 12(b)(6) motion. Defendant argues that the SAC fails to allege infringement of multiple elements of claim 1, including the (i) base unit, (ii) environmental device, (iii) command, (iv) control instruction, and (v) the transmission of a "notification via a simple message service responsive to determining that the cellular remote unit is outside of the geo-fence." ("SMS Limitation"). ECF No. 91 at 8, 13. Defendant argues that the SMS Limitation is critical, given the prosecution history

6

of the '655 Patent, which confirmed that "simple message service" was a typographical error, and merely states the conventional and well-known "short message service," or "SMS" text message. *Id.* at 12.

Plaintiffs, on the other hand, contend that they have alleged that "CPS Energy's products meet each element of specific claims." ECF No. 93 at 6; *id.* at 10 (Plaintiffs have "alleged that CPS Energy infringes the '655 Patent by having . . . products that satisfy *each and every limitation of one or more claims* of the '655 Patent"). In their sur-reply, they attach a claim chart for clarification. ECF No. 96 at 3–4.

The Court agrees that Plaintiffs have plausibly pled that the Accused Products infringe on *some* elements of Claim 1 of the '655 Patent. For example, Plaintiffs offer pictures and descriptions of the Accused Products and Honeywell device that plausibly allege infringement on the "base unit" and "environmental device" elements. ECF Nos. 89 ¶¶ 31, 33, 39; 96 at 3. Plaintiffs also point to the Accused Products as the system which enables the two-way communication between the "base unit" and "remote unit" by wireless connectivity, which allows users to receive environmental information and, in response, "send a control instruction" and a "command" to the base unit to change environmental parameters in the user's home. ECF No. 89 ¶¶ 31, 33, 36–37.

But a key element of Claim 1 is that the communication between the remote unit and the base unit is "transmit[ted] via a simple message service." ECF No. 89-1, col. 14, 24–25. This term was the subject of extensive review in the *inter partes* proceedings before the PTAB. There, Plaintiffs conceded "simple message service" was a typographical error which should have read "short message service" or "SMS," i.e., the common "text message." ECF No. 91 at 5; 91-7 at 51 ("we haven't disputed that simple message service can be treated synonymously with short

7

message service").[3] The PTAB confirmed this interpretation. *See* ECF No. 91-8 at 11 (confirming construction of "simple messaging service" to mean "SMS or 'short message service'" because the '655 patent equates the two terms by definition). Accordingly, the "simple message service" element in claim 1 requires the two-way communication between the base and remote unit to be accomplished by "SMS." *See Papst Licensing GMBH & Co. KG v. Samsung Elec. Am., Inc.*, 924 F.3d 1243, 1250–51 (Fed. Cir. 2019) ("the issue preclusion doctrine can apply in this court to the Patent Trial and Appeal Board's decision in an IPR once it becomes final").

Plaintiffs admit that the SAC "does not specifically mention SMS." ECF No. 96 at 2. Still, Plaintiffs point to two allegations in the SAC that they contend plausibly show the Accused Products infringe this element of claim 1. The Court disagrees.

First, Plaintiffs allege that the Accused Products "utilize geoservices to operate the system based on location and that CPS Energy's products allow users to control their Honeywell devices remotely from a mobile device such as but not limited to an iPhone, iPad, or Android device." ECF Nos. 93 at 11; 89 ¶ 30. This allegation, however, says nothing about the use of "SMS" to transmit the controls, only that the method of "control" is accomplished by way of communication between the devices. While this "control" could conceivably be by "SMS," the prosecution history of the '655 Patent prevents Plaintiffs from relying on such a broad allegation. Indeed, prior to *inter partes* review, Ubiquitous pressed a construction of "simple message service" to be a "service capable of transmitting control and command signals between network interfaces." ECF No. 26-4 at 52. This construction is much broader than "SMS" or "text message," and would have comprised various types of communications that can occur through a wireless network. But the PTAB's decision that

---

[3] The prosecution history, including proceedings before the PTAB such as *inter partes* review, "are subject to judicial notice and appropriate for this Court to consider at the pleading stage." *Grecia Estate Holdings LLC*, 605 F. Supp. 3d at 915.

"simple messaging service" means "SMS" *narrows* the element; plausibly alleging infringement of this element requires factual allegations pointed to the SMS Limitation itself. Plaintiff's allegation that the Accused Products allow remote control merely "identif[ies] the allegedly infringing products . . . absent any factual support." *Apollo Fin., LLC v. Cisco Sys., Inc.*, 190 F. Supp. 3d 939, 943 (C.D. Cal. 2016). Plaintiffs fail to provide factual support for how the Accused Products infringe on the SMS Limitation, which is required here as "the technology is not simple and the limitations-at-issue are material." *Vervain,* 2022 WL 23469, at *5.

Second, Plaintiffs point to their allegation that the Accused Products "provide[] users with usage data related to smart thermostats system." ECF No. 89 ¶ 11. Plaintiffs, in their sur-reply, contend that "it is a reasonable inference that usage data provided to the user *can be* a notification transmitted via SMS." ECF No. 96 at 2 (emphasis added). But whether the "usage data" *can* be a "notification transmitted via SMS" does not plausibly allege it is. While a broader construction of "simple message service" may have allowed this inference, Plaintiffs cannot plausibly allege the SMS Limitation by such a broad brush here, given the prosecution history. *See Vervain*, 2022 WL 23469, at *5 ("A plaintiff cannot establish 'why it is plausible that the accused product infringes the patent claim' by merely articulating why it is plausible that the accused product practices the prior act." (quoting *Bot M8*, 4 F.4th at 1353)).

In the alternative, Plaintiffs argue that they prevail under the doctrine of equivalents because "the accused products use an equivalent to short message service." This too falls short. Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (citing

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)). Plaintiff fails to provide any factual support besides boilerplate allegations that the Accused Products infringed "through the doctrine of equivalents." ECF No. 89 ¶ 58. This is insufficient. *See Vytacera Bio, LLC v. Cytomx Therapeutics, Inc.*, No. 20-333, 2023 WL 7125196, at *5-6 (D. Del. 2023) (allegation of infringement "literally and/or under the doctrine of equivalents" did not sufficiently plead a doctrine-of-equivalents theory). Further, prosecution history estoppel "prevents a patent owner from recapturing with the doctrine of equivalents subject matter surrendered to acquire the patent." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1312 (Fed. Cir. 2008). Because the '655 Patent's prosecution history reveals that "simple message service" means "SMS," and not the broader construction previously asserted by Plaintiffs, Plaintiffs cannot prevail under the doctrine of equivalents. Doing so would require the Court to adopt an already-surrendered broader construction to encompass equivalents of some other type of wireless communication.[4]

Finally, Plaintiffs seeks shelter in *Disc Disease*, where, according to Plaintiffs, the infringement allegations "consisted entirely of an attached picture and two paragraphs with little detail." ECF No. 93 at 13. Plaintiffs argue that they have gone "above and beyond what was found sufficient in *Disc Disease* by providing approximately 28 paragraphs of allegations against specific products (with pictures), claims, and claim elements, and by providing notice of features of the accused products involved in the City of San Antonio's infringement." ECF No. 93 at 13.

---

[4] Plaintiffs offer no response to Defendant's argument that Plaintiffs would fail to rebut the presumption of estoppel, which would require that (1) the alleged equivalent was unforeseeable at the time of amendment; (2) that the rationale for the amendment bore no more than a tangential relation to the alleged equivalent, or (3) some other reason suggesting that the patentee could not reasonably be expected to have described the equivalent. *See* ECF No. 91 at 19 (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003)).

The Court agrees with Defendant; Plaintiffs amended claim 1 to include the limitation of "simple message service" before the Examiner to "avoid prior art," which, at the time of the amendment, was known to include other types of wireless two-way communication. ECF Nos. 91 at 9–10; 91-4 at 10–11, 23–26, 43, 46–47.

Plaintiff's reliance on *Disc Disease* is unavailing for three reasons. First, *Disc Disease* does not suggest that *quantity* of allegations suffices at the pleading stage; *quality* controls. Second, *Disc Disease* still requires a plaintiff to plausibly allege that the accused products meet "each and every element of at least one claim" of the asserted patent. 888 F.3d 1256, 1260 (Fed. Cir. 2018). As explained above, Plaintiffs provide no factual allegations about the SMS Limitation. And third, *Disc Disease* involved a "simple" mechanical patent and device, unlike the '655 Patent which contains software-based claims that require greater factual detail. *See Bot M8 LLC*, 4 F.4th at 1353.

Accordingly, Plaintiffs' claims for direct infringement of Patent '655 are **DISMISSED**. Because Plaintiff's claims for indirect and contributory infringement require that direct infringement be satisfied, these claims are **DISMISSED** as well. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement.") (citation and internal quotation marks omitted).

## B. Leave to Amend

Plaintiffs seek leave to amend. Under Federal Rule of Civil Procedure 15(a), "leave to amend shall be freely given when justice so requires," and should be granted absent some justification for refusal. *Foman v. Davis,* 371 U.S. 178, 182 (1962). The liberal amendment policy underlying Rule 15(a) affords the court broad discretion in granting leave to amend and, consequently, a motion for leave to amend should be denied only if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the amendment, . . . ." *Foman,* 371 U.S. at 182. Leave to amend is not required, however, when plaintiffs have already pled their "best case." *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir.

11

2009) (per curiam). Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).

The Court declines Plaintiffs request for leave to amend. Plaintiffs have had over a year to search for factual support before filing the SAC, and failure to plead their "best case" at this stage weighs against allowing another opportunity to correct their deficiencies. Further delays here would prejudice Defendant. Any amendment would also be futile; Plaintiffs have not hinted at any other explanation for how the Accused Products infringe on the SMS Limitation, nor have they explained how further investigation into the Accused Products could unearth this evidence. As explained above, Plaintiffs are also estopped from proceeding under a doctrine of equivalents theory as it would expand the scope of "simple message service." Nor have Plaintiffs complied with Local Rule CV-7, which requires Plaintiffs to attach a copy of the proposed amended complaint to their pleading. L.R. CV-7(b).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 91) is **GRANTED**. Plaintiffs Ubiquitous Connectivity, LP and Charles Shamoon's claims are **DISMISSED WITH PREJUDICE**.

It is **FURTHER ORDERED** that Defendant's counterclaims of non-infringement and invalidity (ECF No. 18 ¶¶ 7–14) against Plaintiff Ubiquitous are **DISMISSED AS MOOT WITHOUT PREJUDICE**. *See Alexsam, Inc. v. Simon Prop. Group, L.P.*, No. 2:19-CV-331-RWS-RSP, 2022 WL 17727749, at *1-2 (E.D. Tex. July 14, 2022).

A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** this 30th day of April, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE